UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,    :

v.    :    CRIMINAL NO. 1:25-cr-127

:    (JUDGE MANNION)

OTIANNY VICENTE,

:

Defendant.

:

## MEMORANDUM

Presently before the court is Defendant Otianny Vicente's ("Vicente") motion to suppress evidence. **(Doc. 35)**. For the reasons set forth herein, Vicente's motion will be **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

On August 8, 2024, members of the Lebanon County Drug Task Force ("LCDTF") organized a purchase of methamphetamine from a target ("CI-1"), using a confidential informant. While being surveilled, CI-1 texted the LCDTF members, telling them to head to the predetermined meeting location. CI-1 was followed to the parking lot of Building A in the Lebanon Court Apartment complex and remained for a period of time before driving to the meeting

---

[1] The following information is derived from the Affidavit of Probable Cause, (Doc. 41-2 at 4), and Detective Lawrence Minnick's ("Detective Minnick") Report. (Doc. 41-1 at 3-7).

point. Upon arrival, CI-1 was taken into custody by the Pennsylvania State Police.

The next day, law enforcement officers obtained a search warrant for CI-1's car and discovered a bulk quantity of methamphetamine. CI-1 advised that the methamphetamine was purchased from Vicente and provided his apartment address—the first location to which CI-1 was followed the night before. CI-1 also informed law enforcement that additional methamphetamine was observed on the kitchen table in Vicente's apartment.

Detective Minnick confirmed the location of Vicente's residence with the property manager of the Lebanon Court Apartment complex and by the address on Vicente's driver's license. On August 10, 2024, Detective Minnick submitted an affidavit of probable cause in support of an application for a search warrant. Judge Charles T. Jones, Jr., authorized the search of Vicente's apartment for controlled substances, drug paraphernalia, drug proceeds, and electronic media. Through this search, law enforcement found approximately 3 kilograms of methamphetamine and 6.8 kilograms of marijuana, along with multiple phones, a digital scale, and miscellaneous drug packaging.

On April 30, 2025, a grand jury sitting in the United States District Court for the Middle District of Pennsylvania issued an indictment charging Vicente with one count of Possession with Intent to Distribute Methamphetamine and Marijuana, in violation of 21 U.S.C §841(a)(1). (Doc. 1).

On April 30, 2026, Vicente filed a motion to suppress all evidence obtained pursuant to the search warrant executed at his apartment and any statements and derivative evidence obtained during and after the execution of the search warrant, (Doc. 35), and accompanying brief. (Doc. 36). On May 21, 2026, the Government filed its brief in opposition to the motion. (Doc. 41). On June 5, 2026, Vicente filed a reply to the Government's brief in opposition. (Doc. 42).

Vicente argues that the affidavit of probable cause supporting the search warrant application failed to establish probable cause. (Doc. 35). The Government argues that probable cause existed because CI-1's statements were corroborated by law enforcement officers' direct observations. (Doc. 41 at 1). Further, the Government argues that, even if the warrant had been invalid, the evidence should not be suppressed because the officers acted in good faith with reliance on the authorized warrant. (Doc. 41 at 2).

- 3 -

## II.    MOTION TO SUPPRESS

### a. Legal Standard

Protection against unreasonable searches and seizures is provided by the Fourth Amendment:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

"The Fourth Amendment, like the other Amendments contained in the Bill of Rights, imposes direct limitations on the actions that may be taken by the Federal Government." *Adams v. Springmeyer*, 17 F.Supp.3d 478, 490 (W.D.Pa. 2014) (citing *McDonald v. City of Chicago*, 561 U.S. 742 (2010)). The Fourth Amendment's purpose is to "safeguard the privacy and security of individuals against arbitrary invasions" by the Government. *Camara v. Mun. Ct. of S.F.*, 387 U.S. 523, 528 (1967). For purposes of the Fourth Amendment, a search "occurs when an expectation of privacy that society is prepared to consider as reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Generally, a search "requires a warrant supported

by probable cause." *Carpenter v. United States*, 138 S.Ct. 2206, 2213 (2018) (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). "[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998).

"Under the exclusionary rule, 'evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure.'" *United States v. Lara-Mejia*, 482 F.Supp.3d 281, 293 (M.D.Pa. 2020) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)). "This prohibition also applies 'to the fruits of the illegally seized evidence.'" *Id.* "The rule operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" *Id.* (citations omitted).

Generally, "the burden of proof is on the defendant who seeks to suppress evidence." *U.S. v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (citation omitted). "However, once the defendant has established a basis for his motion, i.e., the search or seizure was conducted without a warrant, the burden shifts to the Government to show that the search or seizure was reasonable." *Id.* (citation omitted). That is, the Government must show that

the warrantless search falls within "certain reasonable exceptions." *Kentucky v. King*, 563 U.S. 452, 459 (2011).

### b. The search warrant was properly issued.

Vicente's motion is based on the Fourth Amendment exclusionary rule. "The Supreme Court has read the Amendment's twin commands in tandem, holding that when people have a reasonable expectation of privacy in their persons or effects, all searches and seizures must be supported by a warrant, unless they fall into one of the exceptions to that requirement." *Lara-Mejia*, 482 F. Supp. 3d at 293 (citing *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)).

The Supreme Court has also established the use of the "totality-of-the-circumstances" test in *Illinois v. Gates*, effectively replacing the two-pronged approach previously required for verifying confidential statements. 462 U.S. 213, 230-231 (1983). The rigid two-pronged test elements determining the "veracity," "reliability," and "basis of knowledge" of the confidential informant are not required by the totality-of-the-circumstances approach but "may usefully illuminate the common-sense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id.* at 214.

In assessing probable cause based on a confidential informant's statements, it is enough that "corroboration through other sources of information reduced the chances of a reckless or prevaricating tale," thus providing "a substantial basis for crediting the hearsay." *Id.* at 244-45 (citing *Jones v. United States* 362 U.S. 269, 271 (1960)).

Vicente argues that the affidavit failed to establish probable cause for a search warrant because it "relied primarily on the uncorroborated statements of a first-time informant." (Doc. 36, at 1). Vicente claims that the facts provided in the affidavit do not establish "a nexus between the residence and drug trafficking." (Doc. 36, at 2). To support his argument, Vicente cites *United States v. Stearn*, which seems to require a higher standard for corroboration—in that case, the police investigated, surveilled for a week, and saw the defendant engage in the sale of cocaine. 597 F.3d 540, 556 (3d Cir. 2010). The *Stearn* investigation, however, is just one strong example of how corroboration may be accomplished—not a guideline that police must follow—the court acknowledged as such by referring to *Gates*, in which the police corroborated only "seemingly innocent activity," which "became suspicious in light of the initial tip." *Id.* at 556 (citing 462 U.S. at 243).

"Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause . . . the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *Leon*, 468 U.S. at 914 (citing *Spinelli v. United States*, 393 U.S., at 419). Here, law enforcement corroborated through the property manager and Vicente's driver's license that CI-1 provided the correct place of residence for Vicente. Additionally, CI-1 was surveilled arriving at and leaving Vicente's apartment complex and going to a location in Lebanon City, where CI-1 was met by law enforcement, rather than performing a sale of the methamphetamine as expected. This timeline of events corroborates the confidential informant's testimony. *Gates*, 462 U.S. at 244-245. Therefore, this court concludes that the affidavit of probable cause properly supported the search warrant issued by the Honorable Charles Jones, Jr. (Doc. 36-1).

### c. The good faith exception to the Fourth Amendment's exclusionary rule would apply even if the court found contrary to its aforesaid conclusions.

The good faith exception to the Fourth Amendment exclusionary rule prohibits suppression of "evidence obtained by officers reasonably relying on a warrant issued by a detached and neutral magistrate." *Leon*, 468 U.S. at 898. Further:

- 8 -

> [W]hen an officer acting with objective good faith has obtained a search warrant from a judge or a magistrate and acted within its scope . . . there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.

*Id.* at 920.

In *United States v. Tracey*, the Third Circuit identified four situations in which the good faith exception does not apply because of a deficient warrant: "(1) where the magistrate judge issued a warrant in reliance on a deliberately or recklessly false affidavit; (2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function; (3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized." 597 F.3d 140, 151 (3d Cir. 2010). Here, the good faith exception applies. The court takes no issue with the affidavit of probable cause—the record is devoid of any evidence to suggest that Detective Minnick authored it in bad faith. Thus,

- 9 -

Detective Minnick properly obtained the search warrant, and even if the evidence discussed herein should otherwise be suppressed, the good-faith exception dictates admission.

## III.   CONCLUSION

For the foregoing reasons, Vicente's motion to suppress evidence, **(Doc. 35)**, will be **DENIED**. An appropriate order will follow.


**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 6/9/26
25-127-01